Meninchino v. City of New Castle, Appellant.

Argued April 18, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Robert White*, City Solicitor, for appellant.—Where a city by proper corporate action, caused a mound to be erected in a street so that the water coming there naturally was turned aside and flowed over plaintiff's land, it is not liable in an action of trespass: Kislinski v. Gilboy, 19 Pa. Superior Ct. 453; Bridgewater v. Beaver, 269 Pa. 27; Rielly v. Stephenson, 222 Pa. 252.

Where the employes of a city, in cleaning its streets, dump refuse and dirt so that surface water is diverted on to the land of an adjacent owner, the city is not liable to the injured property owner for the negligent act of its employes: Harris v. District of Columbia, 14 A. L. R. 1471; Mitchell v. City of New Castle, 275 Pa. 426; Allentown v. Kramer, 73 Pa. 406; Coal Co. v. Scranton, 148 Pa. 231.

*Clarence A. Patterson*, and with him *J. Clyde Gilfillan* of *Gilfillan & Patterson*, for appellee.—The city is liable in trespass for diverting surface water from its natural course and causing it to flow upon plaintiff's land, where it did not flow before: Torrey v.

Scranton, 133 Pa. 173; Woolheater v. Mifflin Twp., 74 Pa. Superior Ct. 557; Bohan v. Avoca Borough, 154 Pa. 404.

OPINION BY GAWTHROP, J., July 2, 1929:

The action is trespass for damages alleged to have been caused by the negligence of defendant in diverting surface water from the city streets to and upon plaintiff's property. From the judgment entered on a verdict for plaintiff defendant has appealed, and the sole question presented is whether there was error in refusing a point for binding instructions and a motion for judgment n. o. v.

In the light of the verdict the following may be stated as the facts: Plaintiff owns and resides upon a lot at the northeast corner of Swansea Avenue and Liberty Street, in the City of New Castle. Liberty Street, a paved highway, runs north and south and is approximately level, there being a slight slope from the south toward Swansea Avenue, which crosses Liberty Street at right angles. To the west of Liberty Street, Swansea Avenue rises rather abruptly and to the east it slopes sharply downward. Although it has been opened for thirty years, it is unpaved, and is impassable for traffic east of Liberty Street and only slightly used to the west thereof. A considerable area west of Liberty Street drains down to and upon that street. The flow of surface water on Liberty Street is toward Swansea Avenue and, for a period of at least twenty years, at times of freshets and hard rains, water was accustomed to flow down Swansea Avenue from the west, cross Liberty Street and pass eastwardly down Swansea Avenue. This condition prevailed both before and after the paving of Liberty Street. As a result of this action of the water considerable quantities of dirt and gravel were deposited on the surface of Liberty Street. In April, 1927, the em-

ployes of the street department of the city removed some dirt, sand and gravel from Liberty Street and placed it immediately to the east of Liberty Street across the mouth of Swansea Avenue. They continued to deposit this material in this manner until July, 1927, when a mound about three feet high had been formed entirely across the mouth of Swansea Avenue. This mound formed a barrier which prevented the surface water collecting on Liberty Street from crossing that street and taking its natural course down Swansea Avenue. The result was that during a heavy rain in July, 1927, (but not an extraordinary storm or flood) surface drainage water coming down Swansea Avenue from the west and from Liberty Street to the south collected in such quantities at the intersection of the two streets that it ran around and through the north end of the mound or barrier and upon and over the property of plaintiff, and caused the damage for which the suit was brought.

The first contention of the city solicitor is that as no water was gathered together by the city at the intersection of Liberty Street and Swansea Avenue, except what was brought there by the opening of streets and highways and the development of the land as city property, the case is ruled by the decision in Strauss v. Allentown, 215 Pa. 96, in which it was decided that a city is not liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of expansion of the city; and that, therefore, this is a case of damnum absque injuria. We cannot adopt this view. In that case the city had not changed the flow of the surface water in any way, except as a consequence of the gradual and ordinary development of rural into urban property. It did not divert the

water and it flowed into plaintiff's tail race as it had done. True, it was held that the doctrine that surface water is a common enemy which every proprietor may fight to get rid of as best he may, applies to municipalities as well as individuals. But that doctrine is not applicable here, as none of the surface water which was accustomed to flow down Swansea Avenue ever flowed upon plaintiff's land. As the evidence warrants the conclusion that the water would have flowed down Swansea Avenue without damage to plaintiff had it not been for the erection of the mound, the court below was right in holding that the case is ruled by the line of cases which hold that a municipal corporation, diverting the flow of surface water so that it accumulates and flows upon abutting property where it would not flow naturally, is liable to the abutting owner in damages for the resulting injury. See Rohrer v. Harrisburg, 20 Pa. Superior Ct. 543; Torrey v. Scranton, 133 Pa. 173; Woolheater v. Mifflin Township, 74 Pa. Superior Ct. 557. For negligence, either in the construction or repair of public works (when repair is a duty) the corporation itself must respond in damages for a special injury caused by its negligence: Allentown v. Kramer, 73 Pa. 406; Weir v. Plymouth Borough, 148 Pa. 556.

The other contention made in behalf of the city is that it is not liable for the damage sustained by plaintiff, because it was inflicted in the performance of a governmental function, delegated to it to be performed on behalf of the sovereign state. It is well settled that there are marked exceptions to this rule, such as the highway, public works, and nuisance cases: Scibilia v. Philadelphia, 279 Pa. 549, 82 Pa. Superior Ct. 328; Cousins v. Butler Co., 73 Pa. Superior Ct. 86. It is clear that the injury here complained of resulted from acts done by the municipality in maintaining one of its streets, and not in the performance of a service

in the interest of public health, as in the Scibilia case. It follows that appellant's effort to escape liability under the general rule here invoked must fail.

After full consideration of the briefs and argument and examination of the authorities cited, we find no merit in the appeal.

The judgment is affirmed.